**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OPEN ROAD FILMS, LLC, a Delaware limited liability company, *et al.*,[1] | Case No. 18-12012 (LSS) |
| Debtors. | (Jointly Administered) |
| JOHN ROUSSEY, as Plan Administrator of the Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors, | |
| Plaintiff, | Adv. Proc. No. _____ |
| v. | |
| DONALD TANG, an individual; TANG MEDIA PARTNERS LIMITED, a Cayman Islands limited company; TANG MEDIA PARTNERS LLC, a Nevada limited liability company; IM GLOBAL, LLC, a Delaware limited liability company; GLOBAL ROAD ENTERTAINMENT LLC, a Delaware limited liability company; JIE KANG a/k/a/ KEVIN KANG, an individual; ROBERT G. FRIEDMAN, an individual; and DOES 1 through 20; | |
| Defendants. | |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Open Road Films, LLC (4435-Del.); Open Road Releasing, LLC (4736-Del.); OR Productions LLC (5873-Del.); Briarcliff LLC (7304-Del.); Open Road International LLC (4109-Del.); and Empire Productions LLC (9375-Del.). The Debtors' address is 2049 Century Park East, 4th Floor, Los Angeles, CA 90067.

## ADVERSARY COMPLAINT

Plaintiff John Roussey (the "Plan Administrator" or "Plaintiff"), acting on behalf of Open Road Films, LLC, and its affiliated Debtors and debtors in possession (collectively, the "Debtors"), by and through his undersigned counsel, hereby files this Complaint against Defendants Donald Tang, Tang Media Partners Limited, Tang Media Partners LLC, IM Global, LLC, Global Road Entertainment LLC, Jie Kang a/k/a Kevin Kang, and Robert G. Friedman (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.     These Chapter 11 cases arose out of Defendants' failed effort to combine established and successful motion picture development, production, sales, and distribution companies into one enterprise.  In 2017, one of Defendant Donald Tang's many interconnected and jointly managed companies, Tang Media Partners Holdings LLC, acquired the parent company of Debtor Open Road Films LLC and announced plans to combine Open Road Films, LLC and Defendant IM Global, LLC into a new company called *Global Road*.  The film industry media claimed the venture would result in the creation of a new Hollywood "mini-studio."  Not long after, the newly appointed CEO of Open Road Films, LLC, and IM Global, LLC, Defendant Robert G. Friedman, informed film distributors and buyers that the new company would spend approximately $1 billion in production over the next three years.  Within one year, however, the enterprise foundered under the weight of over $100 million in debt and a series of commercially failed motion pictures.

2.     During this catastrophic collapse, Defendants, at the instruction of Donald Tang, caused Open Road Films, LLC to transfer millions of dollars to Defendant entities controlled by Mr. Tang despite Debtors' desperate need for operating capital.  Similarly, Defendants used Open

Road Films, LLC as a "piggy bank" to fund expenses, including a portion of the payroll and employee benefits for Defendants' employees.   Though Debtors claim that these employee payments were allocated on the basis of work performed on behalf of both Debtors and Defendants, neither Debtors nor Defendants have provided a methodology for these purported allocations or demonstrated that the payments were fair value exchanges.  In fact, it appears that Mr. Tang and the other Defendants opportunistically caused Open Road Films, LLC to make the Tang Transfers (as defined below) for the benefit of Defendants even though Defendants knew that Debtors did not have sufficient funds to repay their debts and that the transfers would inevitably harm the Debtors and their creditors.  As a result, the industry-touted merger of Open Road Films, LLC and IM Global, LLC never came to fruition and Debtors were left without adequate capitalization and an unsustainable debt load.  Moreover, Debtors' unwitting creditors were left holding the bag with substantial unpaid bills. Nevertheless, motion pictures were distributed under the name *Global Road* by an entity that was sequestered from the failed Debtors.

3.      Plaintiff seeks to avoid and recover from Defendants, or from any other person or entity for whose benefit the transfers were made, certain transfers of property during the period immediately preceding the commencement of the above-captioned, jointly administered bankruptcy cases ("Bankruptcy Cases") pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code, and 6 Del. C. §§ 1304 *et seq.,* the Delaware Uniform Fraudulent Transfer Act. Plaintiff also seeks damages under Delaware common law for conversion and breach of fiduciary duties, and under Delaware's Limited Liability Company Act, 6 Del. C. § 18-607, for improper distributions from a limited liability company to its members.

## PARTIES

4.      On October 3, 2019, the United States Bankruptcy Court for the District of

3

Delaware (the "Bankruptcy Court"), entered its *Findings of Fact, Conclusions of Law, and Order Confirming Joint Chapter 11 Plan of Liquidation Proposed By Debtors and Official Committee of Unsecured Creditors* (the "Confirmation Order") [Docket No. 895] confirming the *Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors* (the "Plan") attached as Exhibit 1 to the Confirmation Order.  The Plan became effective on October 7, 2019 (the "Effective Date").  Upon the Effective Date, the Plan Administrator, Plaintiff John Roussey, was appointed as administrator of the Plan to administer the estate and prosecute the claims of Debtors' liquidating estates.[2]  Pursuant to Section 5.5(b) of the Plan, the Plan Administrator is authorized and has standing, on behalf of Debtors' estates, to, among other things, prosecute, compromise, or settle the Retained Rights of Action including this adversary proceeding.[3]  The Plan Administrator is empowered to commence all proceedings that may be commenced and to take all actions that may be taken by the Debtors or any officer or manager of the Debtors. The claims asserted herein are Retained Rights of Action asserted for the benefit of the Debtors' estates, whose creditors are owed tens of millions of dollars.

---

[2] All capitalized terms used but not defined herein shall have the meanings set forth in the Plan.

[3] Pursuant to Section 1.87 of the Plan, "Retains Rights of Action" include "all Rights of Action belonging to any of the Debtors or the Estates as of the Effective Date..."  Pursuant to Section 1.88 of the Plan, "Rights of Action" includes "all claims, demands, rights, defenses, actions, causes of action … , whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law … including but not limited to (1) … claims … for breaches of duties imposed by law; … (4) such claims … as … breach of fiduciary duty… (5) all claims under Bankruptcy Code sections Bankruptcy Code sections 502, 509, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 558, all fraudulent-conveyance, fraudulent-transfer, and voidable-transactions laws, all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers or obligations, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), the Uniform Voidable Transactions Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes … (7) any other claims which may be asserted against any of the Debtors' affiliates, insiders and/or any other third parties."

5.      Defendant Donald Tang is an individual.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang resides in California.

6.      Defendant Tang Media Partners Limited ("TMPL") is a Cayman Islands limited company with its principal place of business in the Cayman Islands.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang is the Chairman of TMPL, controls TMPL, and has an ownership interest in TMPL. Debtor Open Road Films, LLC ("Open Road Films") is a wholly-owned subsidiary of Debtor Open Road Releasing, LLC ("Open Road Releasing"), which is a wholly-owned subsidiary of Tang Media Partners Holdings LLC ("TMP Holdings"), which is a wholly-owned subsidiary of TMPL.  Defendant Donald Tang is the manager of TMP Holdings. Debtors OR Productions LLC ("OR Productions"), Briarcliff LLC ("Briarcliff"), and Open Road International LLC ("Open Road International") are wholly-owned subsidiaries of Open Road Films.  Debtor Empire Productions LLC ("Empire") is a wholly-owned subsidiary of OR Productions.

7.      Defendant Tang Media Partners LLC ("TMP LLC") is a Nevada limited liability company with its principal place of business in Los Angeles, California.  Defendant TMP LLC is a wholly-owned subsidiary of Defendant TMPL.  Defendant Donald Tang is the manager of TMP LLC.  TMP LLC is the manager of Open Road Films and Open Road Releasing.

8.      IM Global, LLC ("IM Global") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  IM Global is a wholly-owned subsidiary of TMP Global LLC ("TMP Global"), which is a wholly-owned subsidiary of Defendant TMP LLC.  TMP Global is also the manager of IM Global.  Defendant Donald Tang is the chief executive officer (CEO) and manager of TMP Global.

9.      Defendant Global Road Entertainment LLC ("Global Road") is a Delaware limited liability company with its principal place of business in Los Angeles, California.  TMP Holdings is the manager of Global Road.

10.     Defendant Jie Kang a/k/a Kevin Kang ("Kang") is an individual.  Plaintiff is informed and believes, and based thereon alleges, that Kang resides in California.  Kang and Defendant Donald Tang are the two individuals that comprise the Board of Directors for Open Road Releasing.

11.     Defendant Robert G. Friedman ("Friedman") is an individual.  Plaintiff is informed and believes, and based thereon alleges, that Friedman resides in California.  Friedman was the Chairman and CEO of IM Global, Open Road Films, and Global Road as of the Petition Date.

12.     Defendants TMPL, TMP LLC, IM Global, and Global Road are collectively hereinafter referred to as the "Tang Entities."

13.     The following organizational chart reflects the relationships among the Defendants, Debtors, and certain affiliated entities:

**Organizational Chart of Defendants, Debtors, and Affiliates**



14.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 20, inclusive, are unknown to Plaintiff, and Plaintiff therefore files suit against said defendants by said fictitious names.  Plaintiff will amend this Complaint to state the true names and capacities of said defendants when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that Does 1 through 20, inclusive, or some of them, participated in all or some of the acts hereinafter alleged and are liable to Plaintiff therefor.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and Section 5.5(b) of the Plan.  This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(3), 1408 and 1409.

16.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

17.     The statutory and legal predicates for the relief sought herein are Sections 544, 547, 548 and 550 of the Bankruptcy Code, 6 Del. C. §§ 1304 *et seq*. and 18-607, and Delaware common law.

/ /

/ /

/ /

## FACTUAL BACKGROUND

### A.    DEBTORS' BACKGROUND AND FUNDING

18.    Prior to the Petition Date, Debtors' primary business was distributing motion pictures in the United States. Debtors also licensed the rights to distribute such motion pictures in other territories and in ancillary markets.  Open Road Films was launched in 2011 as a strategic partnership between Regal Entertainment Group ("Regal") and AMC Entertainment ("AMC"), two leading film exhibitors in the United States.

19.    Prior to the Petition Date, Debtors released approximately 45 films, including *Killer Elite* (2011), *Jobs* (2013), *Machete Kills* (2013), *Side Effects* (2013), *JB: Believe* (2013), *Nightcrawler* (2014), *Chef* (2014), *Rosewater* (2014), *The Gunman* (2015), *Little Boy* (2015), *Dope* (2015), *Mother's Day* (2016), and *The Nut Job 2* (2017).  These films generated $1.3 billion in worldwide box office receipts through the Petition Date.

20.    In 2015, Debtor Open Road Films, as borrower, Debtor Open Road Releasing, as a pledgor, the remaining Debtors, as guarantors (the "Guarantors"), Bank of America, N.A., as lender and letter of credit issuer and each of the lenders party thereto (collectively, the "Prepetition Lenders"), and Bank of America, N.A., as administrative agent (in such capacity the "Agent" and, together with the Prepetition Lenders, the "Prepetition Secured Parties"), entered into that certain *Second Amended and Restated Credit, Security, Guaranty and Pledge Agreement*, dated as of April 8, 2015 (as amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified, the "Prepetition Credit Agreement").  As of the Petition Date, the outstanding aggregate principal amount owing under the Prepetition Credit Agreement was $90,750,000.

/ /

/ /

**B.**    **DEFENDANTS PURCHASE DEBTORS AND THEN TRANSFER SUBSTANTIAL DEBTOR ASSETS TO THE TANG ENTITIES**

21.    On August 4, 2017, Regal and AMC sold their equity membership interests in Open Road Releasing (the "2017 Sale") to TMP Holdings, a holding company controlled by Defendant Donald Tang.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang intended to combine the Debtors' business and certain assets of Defendant IM Global—a company that Mr. Tang had recently acquired through TMP Global and that handled international film sales, co-financing, production, and distribution—into Global Road, a newly-formed subsidiary of TMP Holdings (the "Global Road Restructure").  Mr. Tang, through TMPL, sought additional funding to finance the Global Road Restructure ("Round D Financing").

22.    Following the 2017 Sale, however, Debtors expended a large portion of their cash in operations and suffered significant financial losses during the remainder of the year, reportedly due in part to the underperformance of certain of Debtors' motion picture releases.  Debtors' ended 2017 with negative operating cash flows of approximately $31,800,000 for the year.

23.    Shortly after the 2017 Sale, the Tang Entities also concluded that Regal and AMC had made materially false representations regarding the distribution income that Open Road Releasing and its controlled subsidiaries would generate.  Accordingly, TMP Holdings tendered a claim under its Buyer-Side Representations and Warranties Insurance Policy (AIG Specialty Insurance Company Policy No. 14781268) related to these false representations and recovered insurance proceeds.  Though Open Road Films was a "Named Insured" under the policy, Plaintiff is informed and believes that the Tang Entities failed to use the insurance proceeds, or otherwise remedy the capital deficit discovered, for the benefit of Debtors and their creditors.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities knew the

Global Road Restructure would require additional capitalization, but allowed the Debtors to operate in a severely undercapitalized condition, which shifted risks to Debtors' creditors.

24.    On or about January 23, 2018, One Hundred Towers, LLC ("OHT"), as landlord on the one hand, and Open Road Films, IM Global, Global Road, and TMP LLC (IM Global, Global Road, and TMP LLC are hereinafter collectively referred to as the "Non-Debtor Tenant Parties", and Open Road Films and the Non-Debtor Tenant Parties are hereinafter collectively referred to as "Tenant"), collectively as tenant on the other hand, entered into a lease (the "Lease") for certain premises and temporary premises located at an office building at 2049 Century Park East, Los Angeles, California.  Pursuant to the Lease, the tenant obligations of Open Road Films and the Non-Debtor Tenant Parties were joint and several.

25.    As of January 31, 2018, Debtors' liabilities far exceeded the value of their assets. Debtors' unaudited monthly financial statements indicate that the total value of Open Road Films' assets at the time was $53,952,000 while its total current liabilities were $48,900,000 and its total other liabilities were $103,445,000.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that Open Road Films was late on approximately $6,600,000 of payments to vendors at this time, with approximately $1,500,000 of that sum overdue by more than 90 days.

26.    Despite their losses and their desperate need for operating capital, the Debtors were directed by Mr. Tang and the Tang Entities to transfer $2,500,000 to certain of the Tang Entities in February 2018.  In an email dated February 6, 2018, the Chief Financial Officer (CFO) of TMP LLC at the time, Mimi Tseng, instructed the CFO of Open Road Films at the time, Alexa Platt, to transfer $2,500,000 million from Open Road Films to its indirect parent, TMPL, stating as follows: "Per our conversation, please transfer $2,500,000 of the temporary cash infusion TMPL wired to Open Road in December 2017 back to TMPL per the wire details below…"  The following day,

on February 7, 2018, Open Roads Films transferred $2,500,000 to TMP LLC (the "TMP Transfer").  In its Statement of Financial Affairs [Docket No. 204], Open Road Films listed the reason for this transfer as "TRANSFER TO TMP - TEMP LOAN REPAYMENT."  However, these attempts to characterize the TMP Transfer as a repayment of a short-term loan from December 2017 are inconsistent with Debtors' financial records, which identify the TMP Transfer as a capital distribution.  Specifically, the Open Road Film's unaudited monthly financial statement for February 2018 lists a "capital distribution" of $2,500,000.  Moreover, Open Road Films' unaudited monthly financial statement for December 2017 lists a "members contribution" and "capital contribution" in the amount of $2,500,000.

27.     While struggling to generate funds for operations, Debtors attempted to project an image of financial stability to the public.  In February 2018, Defendant Friedman reportedly informed international film distributors and buyers at the Berlin International Film Festival that Debtors intended to spend approximately $1 billion on film and television projects in the following three years.  As of February 28, 2018, however, Debtors' unaudited monthly financial statements indicate that the total value of Open Road Films' assets at the time was $49,957,000 while its total current liabilities were $42,343,000 and its total other liabilities were $103,662,000.

28.     Thereafter, Mr. Tang and TMPL were unable to obtain further "Round D Financing" for Debtors and the Global Road Restructure was never consummated.  Accordingly, Debtors were unable to obtain an audit opinion without a "going-concern" qualification by April 2018, which put Debtors in default under the Prepetition Credit Agreement.  As of April 30, 2018, Debtors' unaudited monthly financial statements indicate that the total value of Open Road Films' assets was $55,954,000 while its total current liabilities were $58,367,000 and its total other liabilities were $107,041,000.

29.    In May 2018, Debtors entered into a Fourth Amendment to the Prepetition Credit Agreement, which provided Debtors with an additional 60 days until June 30, 2018 to procure certain required financial statements.

30.    As Debtors were struggling to meet their financial obligations, and at a time when they were insolvent, they made at least two additional large money transfers to IM Global. Specifically, on May 17, 2018, Open Road Films transferred $1,000,000 to its indirect parent's indirect subsidiary and insider, IM Global, and an additional $500,000 to IM Global on June 18, 2018 (collectively, the "IM Global Transfers").  In its Statement of Financial Affairs [Docket No. 204], Open Road Films simply listed the reason for these transfers as "TRANSFER TO IM GLOBAL."  Furthermore, at the § 341 creditor's meeting for the Bankruptcy Cases, Debtors' representative stated that Mr. Tang, individually and through the Tang Entities, instructed Open Road Films to make the IM Global Transfers as repayment for monies that Debtors allegedly owed to the Tang Entities, including $1,000,000 that the Tang Entities allegedly transferred to Open Road Films in April 2018 for print and advertising costs.  Once again, however, Debtors' characterization of the IMG Transfers is inconsistent with Debtors' financial records, which describe the $1,000,000 transfer to IM Global as a "temporary intercompany transfer" and the $500,000 transfer to IM Global as an "IM Global funding transfer."  However, Open Road Films' unaudited monthly financial statement for April 2018 lists the $1,000,000 transfer to Open Road Films as a "members contribution" and "capital contribution," and adjusts the prior capital distributions from $2,500,000 to $1,500,000.

31.    Debtors' financial position deteriorated further in May and June 2018 as the business suffered from the disappointing box office performances of its motion picture releases. Debtors shifted the risks of their substantial undercapitalization to creditors in this period and

incurred tens of millions of dollars in marketing and advertising expenses to third parties in connection with these releases, in some instances expressly under the banner of "Global Road Entertainment". By May 31, 2018, Open Road Films' total current liabilities had ballooned to $91,387,000—up more than $30 million from the previous month—as its accounts payable increased by more than $26 million. At that time, Open Road Films' total other liabilities rose to $115,142,000 while the total value of its assets was only $66,554,000. Moreover, Plaintiff is informed and believes, and based thereon alleges, that Open Road Films was late on approximately $9,000,000 of payments to vendors at the time.

32.     As Debtors' business was clearly failing, the Debtors also began to pay wages to certain employees (the "Shared Employees") of TMP LLC, IM Global, and Global Road for work supposedly performed on behalf of both the failing Debtors and these entities. According to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Payment of Limited Prepetition Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (II) Authorizing Payment of Reimbursement for Prepetition Expenses, (III) Authorizing Payment of Withholding and Payroll-Related Taxes, (IV) Authorizing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments, and (v) Scheduling Final Hearing* [Docket No. 4], there was a "cost-sharing understanding among the entities as to portion of each employee's costs that is funded by Debtors, based on a percentage of time that it is estimated that such employee devotes to the business of the Debtors and the non-debtor affiliates, respectively" (¶ 12). However, Debtors' bankruptcy petitions and related filings fail to describe a methodology for this "cost-sharing" or allocation of funds, and Debtors' books and records do not reflect any written agreements setting forth a methodology.

33.     According to its Statement of Financial Affairs, Open Road Films made the following transfers to Global Road to fund the payroll of both Shared Employees and employees of Debtors (the "Shared Employee Payroll Transfers"):

| Transfer Date | Amount | Payroll Period |
|---|---|---|
| 5/31/2018 | $881,016.55 | 5/14/2018 – 5/25/2018 |
| 6/13/2018 | $425,000.00 | 5/28/2018 – 6/8/2018 |
| 6/14/2018 | $366,997.27 | 5/28/2018 – 6/8/2018 |
| 6/25/2018 | $855,000.00 | 6/11/2018 – 6/22/2018 |
| 7/11/2018 | $836,699.70 | 6/25/2018 – 7/6/2018 |
| 7/25/2018 | $791,646.14 | 7/9/2018 – 7/20/2018 |
| 8/9/2018 | $790,706.60 | 7/23/2018 – 8/3/2018 |
| 8/22/2018 | $600,000.00 | 8/6/2018 – 8/17/2018 |
| 8/27/2018 | $138,971.44 | 8/20/2018 – 8/28/2018 |
| 8/30/2018 | $139,411.73 | 8/20/2018 – 8/28/2018 |
| 9/4/2018 | $281,600.24 | 8/17/2018 – 9/4/2018 |
| 9/5/2018 | $66,787.02 | 9/5/2018 – 9/7/2018 |
| **TOTAL:** | **$6,173,836.69** | |

34.     Debtors' financial records indicate that these transfers were designed to cover the entire payroll of Debtors and certain Shared Employees, with approximately 60% of the payroll allocated to Debtors' employees and approximately 40% allocated to Shared Employees.  Plaintiff is informed and believes, and based thereon, alleges that the Tang Entities only reimbursed Debtors for one of these payroll periods in the amount of $393,018.98.

35.    According to its Statement of Financial Affairs, Open Road Films also made the

following transfers to Tang Entities to pay employee benefits and salaries to the Shared Employees

and employees of Debtors (the "Shared Employee Benefits Transfers"):

| Date of Transfer | Amount of Transfer | Transferee | Reason for Transfer | Pay Period |
|---|---|---|---|---|
| 11/20/2017 | $163,846.15 | IM GLOBAL | "ORF SHARE (50%) OF ROB FRIEDMAN'S SALARY IN AUG, SEPT, OCT 2017" | |
| 12/14/2017 | $80,913.33 | IM Global | "ORF SHARE (50%) OF ROB FRIEDMAN'S SALARY IN NOV, DEC 2017 ($150K) LESS ORF REIMBURSEMENT OF INEGRATION COSTS ($69K) | |
| 2/2/2018 | $77,326.14 | IM Global | "ORF SHARE (50%) OF ROB FRIEDMAN'S SALARY IN JAN 2018 ($75K) PLUS ORF SHARE OF 8020 CONSULTING INVOICE ($4K) LESS ORF REIMBURSEMENT OF INTEGRATION COSTS ($2K)" | January 2018 |
| 2/28/2018 | $1,708.44 | TMP LLC | "FUND FSA" | 1/22/2018 – 2/2/2018; 2/5/2018 – 2/16/2018 |
| 4/5/2018 | $2,917.38 | TMP LLC | "FUND FSA" | 2/19/2018 – 3/2/2018; 3/5/2018 – 3/16/2018; 3/19/2018 – 3/30/2018 |

| 5/15/2018 | $131,434.60 | IM Global | "ORF SHARE (50%) OF ROB FRIEDMAN'S SALARY IN FEB, MAR 2018 ($150K) PLUS ORF SHARE OF 8029 CONSULTING INVOICE($19K) LESS ORF REIMBURSEMENT OF INTEGRATION COSTS ($38k) | February/March 2018 |
|---|---|---|---|---|
| 5/21/2018 | $30,057.62 | Global Road | "401K" | 4/20/2018 – 5/11/2018 |
| 5/21/2018 | $29,999.15 | Global Road | "401K" | 4/16/2018 – 4/27/2018 |
| 6/14/2018 | $4,559.82 | TMP LLC | "FUND FSA" | 5/28/2018 – 6/8/2018 |
| 6/18/2018 | $3,203.36 | Global Road | "FUND FSA" | 4/12/2018 – 4/13/2018; 4/16/2018 – 4/27/2018; 4/20/2018 – 5/11/2018 |
| 6/25/2018 | $3,200.00 | TMP LLC | "FUND FSA" | 6/11/2018 – 6/22/2018 |
| 7/11/2018 | $3,464.41 | TMP LLC | "FUND FSA" | 6/25/2018 – 7/6/2018 |
| 7/25/2018 | $3,464.41 | TMP LLC | "FUND FSA" | 7/9/2018 – 7/20/2018 |
| 8/9/2018 | $3,464.41 | TMP LLC | "FUND FSA" | 7/23/2018 – 8/3/2018 |
| 8/31/2018 | $81,477.36 | TMP LLC | "HEALTH INSURANCE" | August 2018 |
| 9/4/2018 | $26,648.18 | TMP LLC | "HEALTH INSURANCE" | September 2018 |
| 9/5/2018 | $8,775.34 | TMP LLC | "HEALTH INSURANCE" | September 2018 |
| **TOTAL:** | **$656,460.10** | | | |

36.     Debtors' bankruptcy petitions and related filings fail to describe a methodology for the transfer of Debtors' funds for the benefit of Shared Employees employed by certain of the

Tang Entities and Debtors' books and records do not reflect any written agreements setting forth a methodology.

37.    Also in July 2018, after having directed an equity distribution in early 2018 while insolvent, Mr. Tang and TMPL purportedly decided not to provide any additional funds to Debtors. Debtors informed their Prepetition Lenders of this decision and began to negotiate a forbearance agreement as to the Prepetition Credit Agreement. Unsecured creditors were not informed of this decision to pull the plug on Debtors' business.

38.    In light of Debtors' financial difficulties and the ongoing negotiations with the Prepetition Lenders, Debtors retained FTI Consulting, Inc. ("FTI") to provide a Chief Restructuring Officer (CRO) and develop alternative business strategies for the Debtors.  The CRO, Amir Agam, began working on behalf of Debtors on August 3, 2018.

39.    In consultation with the Prepetition Secured Lenders and FTI, Debtors decided to sell their assets through a bankruptcy sale.  However, Debtors and the Prepetition Lenders never executed a forbearance agreement.  Instead, the Prepetition Secured Parties exercised their rights under the Prepetition Credit Agreement and related loan documents to seize control of certain of Debtors' deposit accounts.  Thereafter, Debtors laid off a significant portion of their employees. By the Petition Date, Open Road Films was paying 9 of its own employees and 30 Shared Employees.

40.    Due in part to the Tang Entities' failure to reimburse Debtors for the Tang Entities' allocable share of the combined payroll, Debtors' financial records indicate that TMP LLC owed Debtors $1,709,401 and IM Global owed Debtors $1,908,123.56 as of the Petition Date.  Prior to August 2018, however, Debtors' pre-bankruptcy records indicate that IM Global actually owed

Debtors over $3 million. Then, on August 18, 2018, TMP LLC ordered $1,500,000 of IM Global's liability to be transferred to TMP LLC's account on Debtors' books.

### C.    BANKRUPTCY PETITION AND SALE OF DEBTORS' ASSETS

41.    On September 6, 2018, Debtors filed their Chapter 11 bankruptcy petitions.  In its bankruptcy schedules, Open Road Films listed $39,167,373.73 in assets, $90,750,000 in secured claims, and $100,720,440.40 in unsecured claims at the time of the Petition.

42.    The Tang Entities did not submit any of the Global Road or IM Global denominated assets of the Global Road combined enterprise to bankruptcy court jurisdiction.  Those entities continued producing, selling, and distributing motion pictures, including for foreign distribution.

43.    Moreover, in October 2018, Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities caused Debtors to adjust and reallocate certain of Debtors' costs to offset a substantial portion of the approximately $3,600,000 that the Tang Entities owed Debtors as of the Petition Date, including retroactively adjusting Debtors' share of the combined payroll from approximately 60% to approximately 80%.  This resulted in, among other things, reallocating $92,485 per month in payroll from the Tang Entities to Debtors for the period of January 2018 through May 2018 and $100,952 in payroll from the Tang Entities to Debtors for June 2018.

44.    On December 19, 2018, the Court entered an *Order (I) Approving Asset Purchase Agreement Among The Debtors and the Buyer, (II) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claim, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f) and (m), (III) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 363 and 365, (IV) Determining the*

*Amounts Necessary to Cure Such Executory Contracts and Unexpired Leases, and (V) Granting Related Relief*  (the "Sale") [Docket No. 483].  Pursuant to the Sale, Debtors' trademarks and goodwill were transferred to the ultimate buyer, Raven Capital Management, LLC ("Raven"), which purchased the Debtors' assets for approximately $87.5 million.  However, the Global Road trademarks with Serial Nos. 87659976 and 87669948 (the "Marks") were not included in the Sale or in Debtors' bankruptcy schedules.

45.     Plaintiff is informed and believes, and based thereon alleges, that, as part of the launch of the new mini-studio, Open Road Films paid thousands of dollars to develop the Marks, with the objective of creating the Global Road Entertainment brand and entity into which it would be merged.  However, the Marks were not registered in the name of Open Road Films, even though Open Road Films intended to derive a beneficial, and ultimately legal, ownership interest in the Marks, or at a minimum an undivided interest therein.  Instead of accurately documenting the interest of Open Road Films so as to protect its interests, TMP LLC, acting under the direction of Donald Tang, filed an application to register the Marks and then abandoned the application in 2019 before obtaining trademark registration for the Marks.  However, as recently as early 2020, motion pictures were released and generated, and continue to generate, revenue under the Marks for the benefit of third parties, including TMP LLC and Donald Tang.

## LEASE TERMINATION AND OHT CLAIMS

46.     On or about September 5, 2018, prior to the Petition Date, OHT and Tenant entered into an agreement to terminate the Lease (the "Lease Termination Agreement").

47.     The Lease Termination Agreement provided that OHT was holding a letter of credit (the "L-C"), provided in accordance with the terms of the Lease.  In consideration for OHT's agreement to terminate the Lease, and subject to certain conditions, OHT was authorized

under the Lease Termination Agreement to draw upon and retain the total amount of the L-C to

apply against defaults and rent due under the Lease.

48.     OHT subsequently drew down on the proceeds of the L-C in the total amount of

$500,000.00.  OHT later advised Open Road Films and the Plan Administrator that OHT had not

commenced any action against the Non-Debtor Tenant Parties with respect to the Lease or the

Lease Termination Agreement.  In addition, although OHT's claims filed in the Bankruptcy

Cases (Claim Nos. 298 and 299, described below) asserted amounts of $1,558,634.82 arising out

of various breaches of the Lease and the Lease Agreement, OHT has advised the Debtors and the

Plan Administrator that its alleged actual damages were approximately $1,010,000, plus

attorneys' fees and costs.

49.     On or about January 24, 2019, OHT filed the following proofs of claim in the

Bankruptcy Cases (collectively, the "OHT Claims"), each arising out of the Lease and/or the

Lease Termination Agreement:

| Claim No. | Debtor | Claim Description |
|---|---|---|
| 298 | Open Road Films | Claim Type: *Administrative*<br><br>Amount: $1,558,634.82, plus interest and fees |
| 299 | Open Road Films | Claim Type: *Unsecured*<br><br>Amount: $1,558,634.82, plus interest and fees |

50.     On August 21, 2019, the Committee filed its *Official Committee of Unsecured*

*Creditors' (I) Objection to Claim No. 298 and Claim No. 299 Asserted By One Hundred Towers*

*L.L.C. and (II) Request for a Limited Waiver of Local Rule 3007-1(F)(III), to the Extent Such Rule May Apply* (the "Claim Objection") [Docket No. 816] in which it objected to the amounts sought in the OHT Claims and the priority asserted in Claim No. 298.

51.     The Plan Administrator, acting on behalf of Debtors, and OHT ultimately entered into a Settlement Agreement (the "OHT Settlement") to resolve their disputes relating to the Claims and the Claim Objection, which agreement was approved by order of the Bankruptcy Court dated November 26, 2019 [Docket No. 951].

52.     Under the terms of the OHT Settlement, OHT received an allowed administrative expense claim in the amount of $300,000.00.  On or about January 16, 2020, Open Road Films paid $300,000.00 to OHT in satisfaction of this obligation.

53.     The OHT Settlement further provided that the Plan Administrator did not release any claims on behalf of the Debtors against the Non-Debtor Tenant Parties by entering into the OHT Settlement.  Moreover, the OHT Settlement was found to have been entered into in "good faith" under Cal. Civ. Proc. Code § 877.6, which bars any other joint tortfeasor or co-obligor (i.e., the Non-Debtor Tenant Parties) from any further claims against the settling tortfeasor or co-obligor (i.e., Open Road Films for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault).

## ALTER EGO ALLEGATIONS

54.     Plaintiff alleges that at all relevant times alleged herein there existed a unity of interest and ownership between Mr. Tang and the Tang Entities, and each of them, such that any individuality and separateness between them has ceased to exist. Adherence to the fiction of the separate existence of Mr. Tang and the Tang Entities from one another would permit an abuse of the corporate privilege, would sanction fraud, and promote injustice.

55.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Mr. Tang was operating the Tang Entities as a single business enterprise.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang owns, dominates, and/or controls the Tang Entities.

56.    Indeed, in February 2019, the entertainment news company Deadline Hollywood published an interview with Mr. Tang on their website in which Mr. Tang took responsibility for Debtors' collapse and admitted that he is the "chairman of the parent company that owns 100 percent of the operating side and its affiliates"—i.e., TMPL—and "everybody reported to [him]." The relevant portion of the transcribed interview published on Deadline Hollywood's website provides as follows:

> DEADLINE: Tang Media Partners raised the money to acquire IM Global and Open Road, but right around the time of the latter acquisition last year, IM Global founder Stuart Ford exited, acrimoniously, Rob Friedman got installed above Open Road founder Tom Ortenberg to his surprise, and then he exited. Friedman told foreign buyers at the European Film Market in Berlin last February that the company would spend $1 billion in production over three years. Global Road hired people away from other jobs, spent money on an office space in Century City. Only six months later, the banks stepped in, around 50 staffers were let go without severance. The time span here was stunning, and some sources told us they were disappointed they didn't see you around the offices as all this chaos was unfolding. What did you miscalculate in going from a company that seemed so promising in Berlin to one that hit the rocks half a year after?

> TANG: There are a lot of pieces that you've given me. Without any order of importance, let me try to answer. My reflection is the following. **I believe I had us scaled up too quickly. That responsibility is clearly mine. I had originally planned to do this, without duplicating a Hollywood business model that I thought could be improved upon. But I ultimately built a company that looked very much like traditional Hollywood production and distribution companies, without their ample resources.** We hired great people and we had a great team, and I believe they did good work. But we had, or rather **I had, a scale and an overhead that forced us to move so quickly, and to invest too heavily in projects, before our longer-term business plan could be built out, especially in terms of unfavorable P&A economics**.

> So once you are in motion, it is very difficult to hold off production and distribution activities when you have as many employees and as high an overhead as we had. So that's

sort of like the overall reflection. In terms of what you mentioned, the Berlin billion dollar plan as the press had it, I learned it for the first time when I read it.

DEADLINE: How is that possible?

TANG: Look, these are questions I appreciate people may have, but ultimately the bottom line is **the buck stops with me. I am chairman of the parent company that owns 100 percent of the operating side and its affiliates. So although we had a good operating structure, ultimately everybody reported to me. What happened did so on my watch, and so it's my responsibility.**

See https://deadline.com/2019/02/donald-tang-global-road-entertainment-implosion-takes-responsibility-1202560462/ (emphasis added).

57.     Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang is the Chairman of Defendant TMPL, controls TMPL, and has an ownership interest in TMPL. Additionally, Mr. Tang is the manager of Defendant TMP LLC, which is a wholly owned subsidiary of TMPL.  Mr. Tang is also the CEO and manager of TMP Global, the entity that wholly owns and manages Defendant IM Global and is wholly owned by Defendant TMP LLC. Similarly, Mr. Tang is the manager of TMP Holdings, the entity that wholly owns and manages Defendant Global Road and is wholly owned by Defendant TMPL.  The offices of TMP LLC, IM Global, and TMP Holdings are all located at 1800 Century Park East, Suite 580, Los Angeles, CA 90067.

58.     As set forth above, the Tang Entities and Debtors "shared" employees.

59.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times alleged herein, the Tang Entities and their agents, employees, representatives, and partners, were agents, employees, representatives, partners, subsidiaries, affiliates, and/or joint venturers of Mr. Tang and/or entities that he owned or controlled, and in undertaking the actions described above were acting within the course and scope of such relationships and with the knowledge, authorization, consent, and ratification of each other, under the control and direction of Mr. Tang.

60.     Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities failed to observe corporate formalities or maintain adequate corporate records.  Mr. Tang and the Tang Entities commingled funds and assets among the Tang Entities to cover liabilities of Mr. Tang's business enterprises.   As set forth above, the Tang Entities caused $1,500,000 in accounts receivable due to the Debtors to be transferred from IM Global's account to TMP LLC's account prior to the Petition Date and directed other transfers of assets with material value to themselves, or for their benefit, at the direction of Mr. Tang.

61.     Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang used the Tang Entities as a liability shield for his operations and that the Tang Entities are a mere façade for the operations and conduct of Mr. Tang.

## CLAIMS FOR RELIEF

## COUNT I

**(Avoidance and Recovery of Actual Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a) Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20)**

62.     The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

63.     Mr. Tang and the Tang Entities caused Open Road Films to make the TMP Transfer, the IM Global Transfers, the Shared Employee Payroll Transfers, and the Shared Employee Benefits Transfers (collectively, the "Tang Transfers").

64.     At the time of the Tang Transfers, Mr. Tang and the Tang Entities knew that Open Road Films was insolvent and knew that Debtors were undercapitalized, had suffered significant losses, desperately needed operating capital, and owed their creditors tens of millions of dollars. Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers for the benefit

of himself and the Tang Entities, and to the detriment of Debtors and Debtors' creditors.  By causing the Tang Transfers to be made, Mr. Tang and the Tang Entities prevented funds from becoming part of the bankruptcy estate for the benefit of all creditors.

65.    Mr. Tang and the Tang Entities knew that Debtors did not have sufficient funds to repay their debts and that the Tang Transfers would inevitably harm Debtors' creditors.

66.    Accordingly, Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers with the actual intent to hinder, delay, or defraud Debtors' creditors.

67.    In accordance with the foregoing, Plaintiff, as the Plan Administrator, may avoid each of the transfers and obligations pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(A) and recover the same from Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20 for the benefit of the estate under 11 U.S.C. § 550.

## COUNT II

**(Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a) Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20)**

68.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

69.    Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers.

70.    At the time of the Tang Transfers, Debtors were insolvent.

71.    Debtors received less than reasonably equivalent value in exchange for the Tang Transfers.

72.    Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers for the actual and quantifiable benefit of himself and the Tang Entities, and to the

detriment of Debtors and Debtors' creditors.  By causing the Tang Transfers to be made, Mr. Tang

and the Tang Entities prevented funds from becoming part of the bankruptcy estate for the benefit

of all creditors.

73.     Mr. Tang and the Tang Entities knew that Debtors did not have sufficient funds to

repay its debts and that the Tang Transfers would inevitably harm Debtors' creditors by, among

other things, reducing the funds available to repay the creditors.

74.     In accordance with the foregoing, Plaintiff, as the Plan Administrator, may avoid

each of the transfers and obligations pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(B) and recover

the same from Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1

through 20 for the benefit of the estate under 11 U.S.C. § 550.

## COUNT III

**(Avoidance and Recovery of Actual Fraudulent Transfers Under 11 U.S.C. §544(b)(1) and
6 Del. C. §§ 1304 *et seq.* Against Defendants Donald Tang, TMPL, TMP LLC, IM Global,
Global Road, and Does 1 through 20)**

75.     The foregoing paragraphs are hereby incorporated by reference as if set forth in

full herein.

76.     Mr. Tang and the Tang Entities caused Open Road Films to make the Tang

Transfers.

77.     At the time of the Tang Transfers, Mr. Tang and the Tang Entities knew that the

Debtors were undercapitalized, had suffered significant losses, desperately needed operating

capital, and owed its creditors tens of millions of dollars.  Mr. Tang and the Tang Entities caused

Open Road Films to make the Tang Transfers for the benefit of himself and the Tang Entities, and

to the detriment of Debtors and Debtors' creditors.  By causing the Tang Transfers to be made,

Mr. Tang and the Tang Entities prevented funds from becoming part of the bankruptcy estate for the benefit of all creditors.

78.     Mr. Tang and the Tang Entities knew that Debtors did not have sufficient funds to repay their debts and that the Tang Transfers would inevitably harm Debtors' creditors.

79.     Accordingly, Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers with the actual intent to hinder, delay, or defraud Debtors' creditors.

80.     In accordance with the foregoing, Plaintiff may avoid each of the transfers and obligations, and recover the same from Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20, pursuant to 11 U.S.C. § 544(b)(1) and 6 Delaware Code §§ 1304(a)(1) and 1307(a).

### COUNT IV

**(Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to 11 U.S.C. §544(b)(1) and 6 Del. C. §§ 1304 *et seq.* Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20)**

81.     The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

82.     Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers.

83.     At the time of the Tang Transfers, Debtors were insolvent.

84.     Debtors received less than reasonably equivalent value in exchange for the Tang Transfers.

85.     Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers for the benefit of himself and the Tang Entities, and to the detriment of Debtors and

Debtors' creditors.  By causing the Tang Transfers to be made, Mr. Tang and the Tang Entities prevented funds from becoming part of the bankruptcy estate for the benefit of all creditors.

86.     Mr. Tang and the Tang Entities knew that Debtors were undercapitalized, did not have sufficient funds to repay their debts and that the Tang Transfers would inevitably harm Debtors' creditors by, among other things, reducing the funds available to repay the creditors.

87.     In accordance with the foregoing, Plaintiff may avoid each of the transfers and obligations, and recover the same from Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20, pursuant to 11 U.S.C. § 544(b)(1) and 6 Delaware Code §§ 1304(a)(2) and 1307(a).

## COUNT V

**(Conversion Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20)**

88.     The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

89.     In the alternative, the Debtor Open Road Films owned, possessed, or had the rights to immediate possession of the above-described funds, and other property interests, transferred to the Tang Entities by Open Road Films.

90.     Mr. Tang and the Tang Entities caused Open Road Films to make the Tang Transfers to certain of the Tang Entities and then wrongfully exercised dominion or control over those funds and other assets.  Mr. Tang and the Tang Entities have failed to return the funds and assets to Debtors.

91.     As a result of the foregoing, Debtors are entitled to damages, including but not limited to actual damages, exemplary damages, pre- and post-judgment interest, and costs.

## COUNT VI

### (Breach of Fiduciary Duties Against All Defendants)

92.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

93.    Friedman was the Chairman and CEO of Open Road Films at all relevant times following the Tang Entities' acquisition of Open Road Releasing in 2017.

94.    Mr. Kang and Mr. Tang are the only two Directors on the Board of Directors for Open Road Releasing.

95.    Additionally, Mr. Tang is the manager of Defendant TMP LLC, which is the manager for both Open Road Releasing and Open Road Films.  Similarly, Mr. Tang is the manager of TMP Holdings, the entity that wholly owns Open Road Releasing, which wholly owns Open Road Films.  As described above, Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang owns, dominates, and/or controls the Tang Entities.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities also controlled Debtors.

96.    As members, managers, officers, directors and/or owners of Debtors and the entities that controlled Debtors while Debtors were insolvent, Mr. Tang, the Tang Entities, Kang, and Friedman owed fiduciary duties to Debtors, including duties of care, loyalty, and good faith as well as the duty to refrain from conflicted and related parties transactions

97.    As members, managers, officers, directors and/or owners of the Tang Entities, Tang, Kang, and Friedman owed fiduciary duties to Debtors and/or the Tang Entities, including duties of care, loyalty and good faith as well as the duty to refrain from conflicted related parties transactions.

98.     Mr. Tang, the Tang Entities, Kang, and Friedman breached their foregoing duties by, among other things, engaging in, or allowing through failures to act when obligated to do so, the following misconduct:

      a.   Self-dealing by causing Debtors to make improper distributions of Debtors' assets, including without limitation the Tang Transfers to or for the direct benefit of Mr. Tang and certain of the Tang Entities;

      b.   Alternatively, self-dealing by causing Debtors to make fraudulent transfers, including the Tang Transfers to or for the direct benefit of Mr. Tang, Mr. Friedman and certain of the Tang Entities;

      c.   Failing to preserve or maximize Debtors' assets by causing Debtors to engage in transactions with Debtors' assets that were obviously not beneficial to the Debtors;

      d.   Improperly using the Global Road Marks for films in 2018, 2019 and 2020 without compensating the Debtors or the bankruptcy estate;

      e.   Failing to protect and maximize the value of the Marks and their associated good will for Debtors by, among other things, abandoning the applications for registration of the Marks in 2019; and

      f.   Causing Open Road Films to make improper distributions on account of member capital investments while insolvent.

99.     The foregoing breaches resulted in harm to Debtors and reduced the value and availability of Debtors' assets while Debtors were insolvent and descended deeper into insolvency. As a result of the foregoing, Debtors are entitled to damages, including but not limited to actual damages, exemplary damages, pre- and post-judgment interest, and costs.

## COUNT VII

**(Improper Distribution Under 6 Del. C. § 18-607 Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 1 through 20)**

100.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

101.    In the alternative, Plaintiff is informed and believes, and based thereon, alleges each of the Tang Transfers was an improper distribution of Debtors' assets for the benefit of certain of Debtors' members or entities that controlled these members—i.e., the Tang Entities.

102.    Mr. Tang is the manager of Defendant TMP LLC, which is the manager for both Open Road Releasing and Open Road Films.  Similarly, Mr. Tang is the manager of TMP Holdings, the entity that wholly owns Open Road Releasing, which wholly owns Open Road Films.  As described above, Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang owns, dominates, and/or controls the Tang Entities.  Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities also controlled Debtors.

103.    Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and the Tang Entities caused Debtors to transfer $2,500,000 to certain of the Tang Entities—i.e., the TMP Transfer—in February 2018 as an improper distribution of member capital.  Open Road Film's unaudited monthly financial statement for February 2018 lists a "capital distribution" of $2,500,000.  Moreover, the Open Road Film's unaudited monthly financial statement for December 2017 lists a "members contribution" and "capital contribution" for this $2,500,000.

104.    Plaintiff is informed and believes, and based thereon alleges, that Mr. Tang and Tang Entities also caused Open Road Films to transfer $1,500,000 to its indirect parent's indirect subsidiary, IM Global, in May and June, 2018—i.e., the IM Global Transfers.  Debtors' financial records describe the $1,000,000 transfer to IM Global as a "temporary intercompany transfer" and

the $500,000 transfer to IM Global as an "IM Global funding transfer."  However, Open Road

Films' unaudited monthly financial statement for April 2018 lists the original transfer of this

$1,000,000 to Open Road Films as a "members contribution" and "capital contribution," and

adjusts the prior capital distributions from $2,500,000 to $1,500,000.

105.    Similarly, Mr. Tang and the Tang Entities caused Open Road Films to make the

other Tang Transfers for the benefit of himself and the Tang Entities, and to the detriment of the

Debtors and the Debtors' creditors.  By causing the Tang Transfers to be made, Mr. Tang and the

Tang Entities prevented funds rightly part of Debtors' assets from becoming part of the bankruptcy

estate for the benefit of all creditors.

106.    Mr. Tang and the Tang Entities knew that Debtors were undercapitalized, did not

have sufficient funds to repay its debts, and that the Tang Transfers would inevitably harm

Debtors' creditors by, among other things, reducing the funds available to repay the creditors.

107.    As a result of the foregoing, Debtors have been harmed and are entitled to damages,

including but not limited to actual damages, exemplary damages, pre- and post-judgment interest,

and costs.

## <u>COUNT VIII</u>

**(Avoidance and Recovery of Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550
Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and
Does 1 through 20)**

108.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full

herein.

109.    In the alternative, each of the Tang Transfers was a transfer for the benefit of

creditors that were also insiders—i.e., the Tang Entities—for an antecedent debt owed by Debtors

before the transfer was made.

110.    At the time of the Tang Transfers, Debtors were insolvent.

111.    Mr. Tang and Tang Entities received more through the Tang Transfers than they would have received otherwise through Debtors' bankruptcy proceedings.

112.    In accordance with the foregoing, Plaintiff may avoid and recover each of the transfers and obligations pursuant to 11 U.S.C. §§ 547 and 550.

## COUNT IX

**(Contribution Against Defendants Donald Tang, IM Global, Global Road, and TMP LLC)**

113.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

114.    On or about January 23, 2018, OHT and Tenant entered into the Lease.  Pursuant to the Lease, the obligations of Open Road Films and the Non-Debtor Tenant Parties were joint and several.

115.    On or about September 5, 2018, prior to the Petition Date, OHT and Tenant entered into the Lease Termination Agreement, which authorized OHT to draw upon and retain the total amount of the L-C to apply against defaults and rent due under the Lease.

116.    OHT subsequently drew down on the proceeds of the L-C in the total amount of $500,000.00.

117.    On or about January 24, 2019, OHT filed the OHT Claims, which arose out of the Lease and/or the Lease Termination Agreement.

118.    On August 21, 2019, the Committee filed the Claim Objection.

119.    On November 26, 2019, the Bankruptcy Court entered an order approving the OHT Settlement, which resolved the disputes relating to the Claims and the Claim Objection.

120.    Under the terms of the OHT Settlement, OHT received an allowed administrative expense claim in the amount of $300,000, which Open Road Films paid on or about January 16, 2020.

121.    The OHT Settlement further provided that the Plan Administrator did not release any claims on behalf of the Debtors against the Non-Debtor Tenant Parties by entering into the OHT Settlement.  Moreover, the OHT Settlement was found to have been entered into in "good faith" under Cal. Civ. Proc. Code § 877.6.

122.    As a result of the foregoing, Plaintiff, as Plan Administrator on behalf of Debtors, is entitled to satisfaction of Debtors' proportionate equitable contribution claim, including but not limited to actual damages, pre- and post-judgment interest, and costs arising out of the payment made to OHT on account of the OHT Settlement.

## COUNT X

**(Accounting Against Defendants Donald Tang, TMPL, TMP LLC, IM Global, Global Road, and Does 11 through 20)**

123.    The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

124.    As members, managers, officers, and owners of Debtors and the entities that controlled Debtors while Debtors were insolvent, Mr. Tang and the Tang Entities owed fiduciary duties to Debtors, including duties of care, loyalty, and good faith.

125.    Debtors' bankruptcy petitions and related filings fail to describe a consistent and clear methodology for the transfer of Debtors' funds for the benefit of Shared Employees employed by certain of the Tang Entities and other shared expenses.  Similarly, Debtors' books and records do not reflect any written agreements setting forth a methodology.

34

126.    Accordingly, Plaintiff seeks an accounting of all prepetition sums and benefits paid to the Shared Employees and for other alleged shared expenses.

## PRAYER FOR RELIEF

Wherefore, upon final trial, Plaintiff prays for the following relief:

(a) Actual, consequential, and punitive damages against Defendants in an amount to be proven at trial;

(b) Accounting, disgorgement and forfeiture regarding proceeds of unjust enrichment and usurpation of Open Road Films' property interests, including in and to the Marks;

(c) An accounting of all prepetition sums and benefits paid to the Shared Employees and for other alleged shared expenses;

(d) Imposition of a constructive trust as to recoverable liquidated sums received by the Tang Entities, or any of them, from Debtors' as alleged hereinabove;

(e) Reasonable and necessary attorneys' fees and court costs;

(f) Prejudgment and post-judgment interest at the highest lawful rates; and

(g) All such other relief to which Plaintiff may show itself to be justly entitled.


*[Remainder of page intentionally left blank]*

Dated:  May 24, 2020                          BARNES & THORNBURG LLP

                                              */s/  Kevin G. Collins*
                                              David M. Powlen (DE No. 4978)
                                              Kevin G. Collins (DE No. 5149)
                                              1000 N. West Street, Suite 1500
                                              Wilmington, DE  19801
                                              Telephone: (302) 300-3434
                                              Facsimile: (302) 300-3456
                                              Email:  david.powlen@btlaw.com
                                              Email:  kevin.collins@btlaw.com

                                              Paul Laurin
                                              2029 Century Park E, Suite 300
                                              Los Angeles, CA  90067
                                              Telephone:  (310) 284-3785
                                              Facsimile:  (310) 284-3894
                                              Email:  plaurin@btlaw.com

                                              *Attorneys for Plaintiff John Roussey*